CHICAGO, R. I. & P. R. CO. v. HALE.

No. 34589.   Feb. 24, 1953.

*254 P. 2d 338.*

Savage, Gibson & Benefield, by Wayne B. Snow, Oklahoma City, and Roberson & Roberson, El Reno, for plaintiff in error.

Fogg, Fogg & Fogg, El Reno, for defendant in error.

PER CURIAM.   This is an appeal from a judgment of the district court of Canadian county, Oklahoma, in which Leonard E. Hale, as plaintiff,

recovered a money judgment against Chicago, Rock Island & Pacific Railroad Company, a corporation, as defendant, for damages to alfalfa crop. The parties here will be referred to as plaintiff and defendant, as they appeared in trial court.

The plaintiff, Leonard E. Hale, in May of 1949, and for several years prior thereto, had been farming a tract of land belonging to and as the tenant of Charles H. Krumm on which alfalfa was raised. This tract of land is located north and east and immediately adjacent to main line and railroad yards of the defendant, Chicago, Rock Island & Pacific Railroad Company in the northwest part of El Reno, Oklahoma. The plaintiff in this action contends that he had 15.5 acres of the land in alfalfa and ready for harvest and in the process of being harvested on or about May 18, 1949, when the growing crop was destroyed by surface water standing thereon that had accumulated as a result of a heavy 4.64 inch rain on the 17th and 18th of May. The plaintiff contends that the alfalfa was flooded and destroyed as a result of the defendant changing the natural flow of the surface waters by construction of its yards and tracks in an area near the alfalfa field, and by permitting a culvert under its tracks near the southwest corner of the property being farmed by the plaintiff to become clogged up, creating a body of water five acres in area on the south side of defendant's tracks, and as a result thereof, the culvert having been opened by a third person, the water flowed upon said alfalfa land, destroying such crop, thus resulting in his damages. The defendant contended in the trial of the case that if the culvert was clogged, stopping up the flow of the water, that the clearing of the same so the water did flow through was by the act of a third person for which it would not be responsible. Defendant further contended that a spur-line was build to the city water works of El Reno, Oklahoma, and that under an agreement with the city, it owned only 380 feet of this spur-line while the balance of the spur was owned by the city, and that defendant was only to maintain that part of the spur owned by the city and had no responsibility for keeping any culverts under the spur track open. The defendant further contended that any change in the natural drainage of the land or area involved was prior to 1907 and that the major expansion of tracks in defendant's yard, the last of which took place in 1929, did not vary or change the flow of surface waters and that the defendant had a prescriptive easement which would prevent plaintiff's recovery.

The evidence in the case established beyond doubt that an unusually heavy rain did accumulate surface waters on the south of defendant's tracks to the east and west thereof, and that the culvert that carried the waters under the tracks of defendant northeasterly had become clogged and that the obstruction thereto was removed by a third person on the morning of May 18th, thus permitting the accumulated water to flow through the culvert and extensively upon the lands being farmed by the plaintiff, which resulted in the destruction of his alfalfa crop. The evidence further showed that in 1929 the defendant constructed four additional tracks some 60 feet in width on the south side of its right of way and over and beyond the culvert which carried drainage water from the south of the tracks under them; and that in the construction of these additional tracks a fill was required to be built some four or five feet in height. That in the building of such additional tracks a drainage ditch which had formerly carried the surface waters eastward was filled up and no longer served its purpose. The evidence seems to be in conflict whether or not the natural drainage of the area was to be eastward prior to the construction of the railroad yards and tracks thereon. The case was submitted to a jury resulting in a verdict for plaintiff for about one-half of the amount sued for, on which verdict

judgment was rendered, the defendant filed timely motion for new trial which was overruled, and this appeal was taken.

The defendant assigns as error four principal points on which it relies and which are argued in its brief. The defendant contends that the court committed error in permitting the plaintiff to recover damages for all of the growing crop.

It is the law of Oklahoma that where a tenant cultivates and matures a crop under a rental contract providing that he shall pay a portion of the crop as rent, he has the right to the possession of the entire crop until same is cut and divided and he can maintain an action for damages for the destruction or injury thereto. Yeldell v. Hines, 73 Okla. 1, 174 P. 229, and Empire Gas & Fuel Co. v. Denning, 128 Okla. 145, 261 P. 929. It is contended that the plaintiff did not clearly establish by the evidence the relationship of landlord and tenant. Although the evidence on this issue was not extensive, we think that the plaintiff met the burden of proof. The plaintiff testified that he was is the farming business, that he had been farming all his life, that he was farming the land in question and that the land was in alfalfa and had been for five or six years, that he was the tenant of the owner of the land and that one-half of the hay was paid in rent, that he had cut the alfalfa and part of it was raked and part of it was being baled when the rain causing the damage occurred. The landlord, Mr. Krumm, testified that he owned the land in question and that Leonard E. Hale, plaintiff, was his tenant and that under his contract with Hale that he received 50 per cent of the crops. The plaintiff, therefore, met the burden of proof enabling him to bring action for recovery of the damages to the entire alfalfa crop.

The defendant also contends that the court committed error by failure to correctly instruct the jury as to its responsibility concerning surface waters.

The court, in the trial of the case,, gave instructions 9 and 12 to which exceptions were taken. These instructions should be considered with instruction No. 7 which the court gave. We quote the instructions:

## "No. 7.

"You are further instructed that the defendant railway company had a right to construct its roadbed and trackage facilities at the place it did in furtherance of its business, even though such construction may have interfered with the natural drainage of surface water and caused an unnatural diversion of such waters. However, in the construction of that part of its spur tracks, embankments, fills and culverts owned and located upon its right-of-way, it was the duty of the defendant to use ordinary care, to so construct and maintain the same in such a manner as not to cause the adjoining landowners any more damage from waters due to surface drainage, than would have naturally occurred if the tracks, fills, embankments and culverts had not been constructed. A failure to exercise such ordinary care either in the construction thereof or in the maintenance or upkeep of the facilities provided for the flow of surface waters, would constitute negligence."

## "No. 9.

"The plaintiffs contend that by filling in and constructing railroad beds for tracks on its right of way, both on its mainlines and on that part of the spur track leading to the City Water Plant, which is located upon its right of way, the defendant has formed an obstruction to the natural flow of surface drainage water, and that by its failure to provide sufficient drainage, and by its failure to properly maintain the culvert under its main tracks, that said culvert became clogged up and prevented the flow of water, which resulted in a large accumulation of water on the south side of the tracks, which when released flooded over into and upon the plaintiff's land. In this connection, you are instructed that if you find a preponderance of the evidence in this case that the defendant railroad company, in building its grade, embankments, fills and openings near the land of the

plaintiffs, failed to use ordinary care and ordinary foresight in determining the nature, width and scope of the openings under its tracks to take care of such surface waters, as with the exercise of ordinary diligence and skill could be reasonably anticipated might flow within the vicinity of such construction, considering the topography of the land, the natural drainage and all surrounding circumstances; or, failed to use and exercise ordinary care and foresight in maintaining and inspecting such openings or culverts as it may have provided, to prevent the same from becoming clogged or stopped up; and was guilty of negligence; and you further find that such negligence, if any, was the proximate cause of damage or injury to the plaintiffs then it would be your duty to return a verdict in favor of the plaintiffs. If you fail to so find, it would be your duty to return a verdict for the defendant."

"No. 12.

"You are further instructed, if you find by a preponderance of the evidence in this case, that in constructing its tracks, fills, embankments and culverts for the passage of water, or in inspecting or maintaining the same, the defendant was guilty of any of the acts of negligence as set out in plaintiff's petition, and you further find that such negligence if any, was the proximate cause, or operated as a proximate contributing cause of flooding the plaintiff's land, and that plaintiffs suffered damages thereby, it will be your duty to return a verdict in this case for the plaintiffs."

Railroads have played an important part in the development of this country and for many years they have been carrying a large part of its commerce. They have enjoyed the right of eminent domain and may build where they choose. At the same time it has been the law of the land that in the building and operation of their tracks, yards and grades they must compensate others for damages suffered by reason of the diversion of surface waters from natural drainage.

The right to divert surface waters by a railroad company is a necessary one, but the right must be exercised reasonably, for proper purposes and in good faith and with due regard to inflict injury only when necessary.

In the case of Chicago, R. I. & P. Ry. Co. v. Groves (1908) 20 Okla. 101, 93 P. 755, this court held:

"Surface water flowing naturally or falling upon the soil may be diverted in its course, and even thrown back upon the dominant estate whence it came, but with certain qualifications. The doctrine that the right may not be exercised wantonly, unnecessarily, or carelessly is a common law doctrine, resting upon the common law, as well as upon the civil law."

This court has many times held that if a railroad company so constructs its roadbed and ditches as to divert surface waters from its usual and ordinary course and by its embankments, ditches or artificial channels cause such water to be conveyed to a particular place, and thereby to overflow the land of another proprietor, which before the construction of such road, ditches, or channels, did not overflow, the company will be liable to such proprietor for the injury. See Chicago, R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 P. 662, 27 L. R. A. (N.S.) 879; Chicago, R. I. & P. Ry. Co. v. Davis, 26 Okla. 434, 109 P. 214; St. Louis & S. F. R. Co. v. Dale, 36 Okla. 114, 128 P. 137.

The defendant insists that the foregoing instructions were erroneous in that they embraced the element of ordinary care and foresight coupled with what might be reasonably anticipated in the construction of its roadbed, fills and culverts. We concede that we have found no reported case in a damage suit such as this where these elements were included in the court's instructions. We are of the opinion that the part of the instructions of which defendant complains would place a greater burden on the plaintiff, and that the same are not prejudicial to the defendant, and that no error was committed in giving of such instructions, when they are considered as a whole.

The defendant next contends that the verdict of the jury is not sustained by the evidence and that it is contrary to and in disregard of the court's instructions.

The jury heard the evidence and had the opportunity of weighing the same and having explained a rather complicated map of the area that was offered in evidence, and were properly instructed. The verdict was not contrary to the court's instructions and there was ample evidence to sustain it.

The judgment of the trial court is affirmed.

This court acknowledges the services of Attorneys Wade H. Loofburrow, F. Hiner Dale and C. E. Bailey, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

JOHNSON, V.C.J., and WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur. HALLEY, C.J., dissents.